No. _____

In the

# United States Court of Appeals
## for the Eleventh Circuit

---

STATE OF GEORGIA

*Defendant-Petitioner,*

v.

UNITED STATES OF AMERICA

*Plaintiff-Respondent.*

---

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division.
No. 16-CV-03088-ELR — Hon. Eleanor L. Ross, *Judge*

---

## STATE OF GEORGIA'S PETITION FOR PERMISSION TO FILE CERTIFIED INTERLOCUTORY APPEAL

---

Christopher M. Carr
  *Attorney General*
Bryan K.Webb
  *Deputy Attorney General*
Katherine P. Stoff
  *Sr. Assistant Attorney General*
Kristen L. Settlemire
  *Sr. Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334

Josh Belinfante
Melanie L. Johnson
Edward A. Bedard
Danielle Hernandez
Javier Pico Prats
Anna Edmondson
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T:(678) 701-9381

*Counsel for Defendant-Petitioner*
*State of Georgia*

*State of Georgia v. United States of America,*

No. _____

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rules 5-1 and 26.1-1 through 26.1-3, counsel for Defendant-Petitioner State of Georgia certify that the below is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. Adams, Crystal, *counsel for United States of America*;

2. AlexaRossLaw, LLC, *law firm for State of Georgia*;

3. Anderson, Kimberly K., *former counsel for State of Georgia*;

4. Baldwin County School District, *third-party respondent*;

5. Bedard, Edward A., *counsel for State of Georgia*;

6. Belinfante, Joshua Barrett *counsel for State of Georgia*;

7. Brinson Askew Berry LLP, *law firm for third-party respondent Floyd County School District*;

8. Brown, Goldstein & Levy, LLP, *law firm for district-court amici The Leadership Conference on Civil Rights, The National Federation of the Blind, The National Alliance of Mental Illness, The Autistic Self-Advocacy Network, The American Association of People with Disabilities, The Atlanta Legal Aid Society, Inc., The Carter Center Mental Health Program, Mental Health America of Georgia, and Parent to Parent of Georgia*;

9. Chevrier, Claire, *former counsel for United States of America*;

*State of Georgia v. United States of America,*
No. _____

10.   Cohen, Frances Susan, *counsel for United States of America*;

11.   Dawson County School District, *third-party respondent*;

12.   Duggan, Ivy Stewart, *counsel for third-party respondent Floyd County School District*;

13.   Edmondson, Anna Nicole, *counsel for State of Georgia*;

14.   England, Travis William, *former counsel for United States of America*;

15.   Floyd County School District, *third-party respondent*;

16.   Forsyth County School District, *third-party respondent*;

17.   Georgia Department of Education, *agency of defendant State of Georgia*;

18.   Gillespie, Matthew Kenneth, *former counsel for United States of America*;

19.   Goldstein, Daniel F., *counsel for district-court amici The Leadership Conference on Civil Rights, The National Federation of the Blind, The National Alliance of Mental Illness, The Autistic Self-Advocacy Network, The American Association of People with Disabilities, The Atlanta Legal Aid Society, Inc., The Carter Center Mental Health Program, Mental Health America of Georgia, and Parent to Parent of Georgia*;

20.   Habersham County School District;

*State of Georgia v. United States of America,*
No. _____

21.    Hawkins, John Matthew, *counsel for third-party respondent Floyd County School District*;

22.    Hernandez, Danielle Maria, *counsel for State of Georgia*;

23.    Hill, Canon B., *counsel for third-party respondent Baldwin County School District*;

24.    Holkins, Patrick, *former counsel for United States of America*;

25.    Hughes, Aileen Bell, *counsel for United States of America*;

26.    Johnson, Melanie Leigh, *counsel for State of Georgia*;

27.    Jones Cork, LLP, *law firm for third-party respondent Baldwin County School District*;

28.    Lill, Victoria  M., *former counsel for United States of America*;

29.    Mental Health America of Georgia, *amicus in district court*;

30.    Morris, Beth Feingold, *counsel for third-party respondent Pioneer Regional Educational Service Agency*;

31.    Oconee Regional Educational Service Agency, *third-party respondent*;

32.    Parent to Parent of Georgia, *amicus in district court*;

33.    Parker Poe Adams & Bernstein LLP, *law firm for third-party respondent Pioneer Regional Educational Service Agency*;

34.    Pereira, Kirby, Kinsinger & Nguyen, LLP

35.    Pico Prats, Javier, *counsel for State of Georgia*;

*State of Georgia v. United States of America*,
No. _____

36.    Pioneer Regional Educational Service Agency, *third-party respondent*;

37.    Polanksy, Jessica, *former counsel for United States of America*;

38.    Putnam County School District, *third-party respondent*;

39.    Robbins Alloy Belinfante Littlefield LLC, *Law Firm for State of Georgia*;

40.    Robin-Vergeer, Bonnie Ileen, *former counsel for United States of America*;

41.    Ross, Alexa Roberta, *counsel for State of Georgia*;

42.    Ross, Hon. Eleanor L., *district judge below*;

43.    Saul, Joseph Harris, *former counsel for State of Georgia*;

44.    Sauls, Reagan Griffin, *counsel for third-party respondent Pioneer Regional Educational Service Agency*;

45.    Scandura, Kate, *counsel for United States of America*;

46.    Solomon, Sydney M., *counsel for third-party respondent Baldwin County School District*;

47.    State of Georgia, *defendant*;

48.    Tayloe, Laura Cassidy, *former counsel for United States of America*;

49.    The American Association of People with Disabilities, *amicus in district court*;

50.    The Atlanta Legal Aid Society, Inc., *amicus in district court*;

*State of Georgia v. United States of America,*
No. _____

51.  The Autistic Self-Advocacy Network, *amicus in district court*;

52.  The Carter Center Mental Health Program, *amicus in district court*;

53.  The Leadership Conference on Civil Rights, *amicus in district court*;

54.  The National Alliance on Mental Illness, *amicus in district court*;

55.  The National Federation of the Blind, *amicus in district court*;

56.  Tucker, Michelle, *former counsel for United States of America*;

57.  United States Department of Justice, *agency of plaintiff United States of America*;

58.  United States of America, *plaintiff*;

59.  Womack, Kelly Gardner, *former counsel for United States of America*;

60.  Watson, Andrea Hamilton, *counsel for United States of America*;

61.  Wohlenhaus, Renee M., *former counsel for United States of America*;

62.  Zachariasiewicz, Jean M., *counsel for district-court amici The Leadership Conference on Civil Rights, The National Federation of the Blind, The National Alliance of Mental Illness, The Autistic Self-Advocacy Network, The American Association of People with Disabilities, The Atlanta Legal Aid Society, Inc., The*

*State of Georgia v. United States of America,*
No. _____

*Carter Center Mental Health Program, Mental Health America of Georgia, and Parent to Parent of Georgia.*

Respectfully submitted this 22nd day of September, 2025,

/s/Josh Belinfante
Josh Belinfante

*Counsel for Defendant-Petitioner*
*State of Georgia*

C-6 of 6

# TABLE OF CONTENTS

Certificate of Interested Persons .......................................... C-1

Table of Authorities.................................................................ii

Introduction................................................................................1

Certified Questions Presented .................................................4

Relief Sought .............................................................................4

Background..................................................................................5

    A.   Georgia law grants to local school boards "exclusive"
        operational authority over local schools. ...............................5

    B.   The ADA and DOJ's "Integration Mandate" regulation. .......7

    C.   The district court's order and certification of questions
        for immediate appeal. ............................................................8

Argument....................................................................................9

   I.   The Certified Questions present important legal questions.......10

   II.   Intra- and inter-Circuit splits confirm that it is debatable
       whether a state can be held liable for "provid[ing]" services it
       does not actually provide. ...........................................................10

    A.   The Order misapplies the ADA's statutory text...................11

    B.   District courts in this Circuit have split on the Article
        III standing questions presented by this Petition................16

   III.  There is a debatable question as to whether Title II imposes a
       causation requirement more stringent than the district court
       imposed here. ..............................................................................22

Conclusion ................................................................................23

Certificate of Compliance....................................................A-1

# TABLE OF AUTHORITIES

## Cases

*Bacon v. City of Richmond, Virginia*, 475 F.3d 633 (4th Cir. 2007) . 3, 14, 23

*Berrocal v. Att'y Gen. of United States*, 136 F.4th 1043 (11th Cir. 2025) ........................................................................................ 18, 22

*Brown v. D.C.*, 928 F.3d 1070 (D.C. Cir. 2019) .................................. 1, 23

*CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229 (3d Cir. 2013) ........... 23

*City of So. Miami v. Governor*, 65 F.4th 631 (11th Cir. 2023) ......... 17, 20

*Davis v. Shah*, 821 F.3d 231 (2d Cir. 2016) .............................................. 3

*Day v. D.C.*, 894 F. Supp. 2d 1 (D.D.C. 2012) ....................................... 16

*Delgado v. U.S. Atty. Gen.*, 487 F.3d 855 (11th Cir. 2007) .................... 12

*Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289 (E.D.N.Y. 2009) .................................................................................. 16

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ............................................................................................... 17

*Friends of Trumbull v. Chicago Bd. of Educ.*, 123 F. Supp. 3d 990 (N.D. Ill. 2015) .............................................................................. 14

*Georgia Advocacy Office et al. v. Georgia*, 1:17-CV-3999-MLB, 2024 WL 4340034, at *1 (N.D. Ga. Sept. 27, 2024) ..................... passim

*Gwinnett Cty. Sch. Dist. v. Cox*, 289 Ga. 265 (2011) ............................ 2, 5

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ........................ 23

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) 18, 19, 20, 21

*Joseph S. v. Hogan*, 561 F. Supp. 2d 280 (E.D.N.Y. 2008) ................ 4, 16

*Kritner v. Alabama Dep't of Human Res.*, 2:23-CV-553-RAH, 2025 WL 451836, at *1 (M.D. Ala. Feb. 10, 2025) ....................... 3, 18, 20, 22

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ....... 7, 11, 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................. 17

*M.G. v. New York State Office of Mental Health*, 572 F. Supp. 3d 1 (S.D.N.Y. 2021) ...................................................................... 16

*Marks v. United States*, 430 U.S. 188 (1977) ........................................ 15

*McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251 (11th Cir. 2004) .... 3, 10

*Murphy by Murphy v. Minnesota Dep't of Human Servs.*, 260 F. Supp. 3d 1084 (D. Minn. 2017) ............................................... 16

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) .................. passim

*Parrales v. Dudek*, 4:15CV424–RH/CAS, 2015 WL 13373978, at *1 (N.D. Fla. Dec. 24, 2015) ...................................................... 16

*Price v. Shibinette*, 21-CV-25-PB, 2021 WL 5397864, at *1 (D.N.H. Nov. 18, 2021) ................................................................... 16

*Russello v. United States*, 464 U.S. 16 (1983) ........................................ 12

*Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008) ..... 22

*State of Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266 (D. Conn. 2010) ...... 16

*Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198 (11th Cir. 2021) ...................................................................... 17, 18

*Todd v. Carstarphen*, 236 F. Supp. 3d 1311 (N.D. Ga. 2017) ................ 14

*United States v. Fla.*, 938 F.3d 1221 (11th Cir. 2019) ("*Florida II*") ...... 11

*United States v. Florida*, 682 F. Supp.3d 1171 (S.D. Fla. 2023) (*Florida III*) ...................................................................... passim

*United States v. Mississippi*, 82 F.4th 387 (5th Cir. 2023) .......... 3, 14, 15

*United States v. Sec'y Florida Agency for Health Care Admin.*, 21 F.4th 730 (11th Cir. 2021) ................................................... 14, 17

*United States v. Texas*, 599 U.S. 670 (2023) ......................................... 17

*Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426 (6th Cir. 2020) ...................................................................... 14

**Statutes**

28 U.S.C. § 1292 ....................................................................... 4, 10, 11, 13

42 U.S.C. § 12112 ............................................................................. 12, 16

42 U.S.C. § 12131 .............................................................................. 1, 7, 11

42 U.S.C. § 12132 ........................................................................ 1, 7, 11, 16

42 U.S.C. § 12182 ............................................................................. 12, 16

O.C.G.A. § 20-2-152 ......................................................................... 2, 5, 16

O.C.G.A. § 20-2-270.1 ............................................................................. 6

O.C.G.A. § 20-2-271 ................................................................................ 7

O.C.G.A. § 20-2-520 ............................................................................... 6

O.C.G.A. § 20-2-943 ............................................................................... 6

**Rules**

Ga. Const. Art. VIII, Sec. V, Par. I .................................................... 2, 5, 15

**Regulations**

28 C.F.R. § 35.130 ....................................................................... passim

Ga. Comp. R. & Regs. 160-4-7-.15 ........................................................ 6, 7

Nondiscrimination on the Basis of Disability in State and Local
  Government Services, 56 FR 35694-01 (July 26, 1991) ................. 8, 12

## INTRODUCTION

This Petition asks whether the Americans with Disabilities Act imposes liability on the State of Georgia for services provided by non-party local school districts pursuant to state law, and, if so, whether the State's liability is limited to any alleged discrimination its conduct directly causes. If the answer to both questions is "yes," the next question presented is what remedies could be available against the State.

To answer these questions, this Court will need to resolve textual differences between (1) the ADA—which prohibits "*discrimination by*" public entities, 42 U.S.C. § 12132, against persons who are eligible for services or programs "*provided by* a public entity," 42 U.S.C. § 12131(2) (emphases added)—and (2) a Department of Justice regulation known as the "Integration Mandate," which requires public entities to "*administer* services and programs … in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d) (emphasis added).

DOJ brought this lawsuit in 2008 and described it as the "First Challenge to a State-Run School System for Segregating Students with Disabilities."[1] It raises systemic claims and seeks a systemic overhaul

_____

[1] Press Release, U.S. Dep't of Justice, Justice Department Sues Georgia for Unnecessarily Segregating Students with Disabilities (August 23,

of Georgia public K–12 education based on the Integration Mandate as partially interpreted by *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). Unlike most ADA claims, here no one (including the district court below) contends that the State provides the challenged special-education services. [Order at 41–52].[2] Indeed, Georgia's constitution and statutes prevent the State from doing so. *See Gwinnett Cty. Sch. Dist. v. Cox*, 289 Ga. 265, 266 (2011) (applying Ga. Const. Art. VIII, Sec. V, Par. I); O.C.G.A. § 20-2-152(b) (obligating local school districts to "provide" special-education services).

The district court decided that this was no bar to DOJ's claims, however, because it said the Integration Mandate goes beyond *providing* services. At summary judgment, it held that the State "administers" special-education services and, therefore, DOJ had satisfied Article III standing and trial should proceed based on DOJ's interpretation of the ADA. [Order at 52]; *see also United States v. Florida*, 682 F. Supp.3d 1171 (S.D. Fla. 2023) (*Florida III*) (reaching similar conclusion after trial).

Normally, this may have simply been error. But only weeks after the district court issued its Order, another judge in the *same district*

---

2016), https://www.justice.gov/opa/pr/justice-department-sues-georgia-unnecessarily-segregating-students-disabilities

[2] The August 16, 2024 order on summary judgment (the "Order") is attached as <u>Exhibit 1</u>.

went the other way in a case involving the same facts and evidence, creating an intra-circuit, intra-district split. *Georgia Advocacy Office et al. v. Georgia*, 1:17-CV-3999-MLB, 2024 WL 4340034, at *1 (N.D. Ga. Sept. 27, 2024).[3]  Then, in February of this year, an Alabama district court confirmed the intra-circuit split by adopting the *GAO* court's reasoning in a similar case involving public education. *Kritner v. Alabama Dep't of Human Res.*, 2:23-CV-553-RAH, 2025 WL 451836, at *1 (M.D. Ala. Feb. 10, 2025).  The district court decisions reflect a similar split among this Court's sister circuits. *Compare United States v. Mississippi*, 82 F.4th 387 (5th Cir. 2023), *Bacon v. City of Richmond, Virginia*, 475 F.3d 633, 642 (4th Cir. 2007); *with e.g., Davis v. Shah*, 821 F.3d 231 (2d Cir. 2016).

Consequently, the district judge in this case certified two questions for this Court's consideration pursuant to 28 U.S.C. § 1292(b) (the "Certification," attached as Exhibit 2).  This Court should grant permission to appeal in this case of national importance, and its review is not limited to the questions certified below. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1255 (11th Cir. 2004).  The certified questions satisfy all requisite criteria: (1) they involve important questions of law; (2) have not been answered by this Court and split

---

[3] The day this Petition was filed, the *GAO* court rejected the plaintiffs' motion for reconsideration, except to modify its dismissal to be without prejudice (Exhibit 3).

authority, both within and outside the Eleventh Circuit; and

(3) adopting any of the State's arguments would terminate this almost

decade-long lawsuit.  *See* 28 U.S.C. § 1292(b); *McFarlin*, 381 F.3d at

1255.

## CERTIFIED QUESTIONS PRESENTED

1. Whether, for purposes of Article III standing or on the merits,
   Title II of the ADA imposes liability for "administering" services
   as set forth in DOJ's regulation known as the "Integration
   Mandate," or whether the text of the ADA limits liability to
   discrimination caused by "programs or activities provided by a
   public entity."

2. Whether—for purposes of Article III's requirement[s] of
   demonstrating traceability and redressability and on the merits—
   Title II imposes liability on a state only for discrimination it
   directly causes, and if a remedial order is limited to restraining
   the enforcement of an allegedly discriminatory law or policy.

## RELIEF SOUGHT

The State of Georgia seeks permission to file an interlocutory

appeal of the district court's August 16, 2024 Order, which, *inter alia*,

granted DOJ's partial motion for summary judgment and denied the

State's motion for summary judgment.

# BACKGROUND

The "facts necessary to understand the question[s] presented" are limited.  Fed. R. App. P. 5(b)(1)(A).  The State of Georgia is the only defendant in this lawsuit, as DOJ chose not to name any of Georgia's 194 local school districts.  The Order granted DOJ's partial motion for summary judgment and denied the State's motion for summary judgment, concluding that the State "administers" the special-education services at issue, DOJ satisfied Article III standing, and that it had stated a claim under the Integration Mandate.

## A. Georgia law grants to local school boards "exclusive" operational authority over local schools.

The Georgia Constitution grants "exclusive" authority to local school boards to oversee and operate K-12 public schools.  *Cox*, 289 Ga. at 266; *see also* Ga. Const. Art. VIII, Sec. V, Par. I.  Consistent with this constitutional mandate, "[l]ocal school systems shall …. *provide* special education programs for all eligible students."  O.C.G.A. § 20-2-152(b) (emphasis added).

To financially assist local school districts' efforts to comply with this obligation, the General Assembly has historically appropriated a mix of state dollars and federal special education funds (administered by the United States Department of Education) to the Georgia Department of Education ("GDOE") to provide what are known as "Georgia Network for Educational and Therapeutic Supports" or

"GNETS" grants.  [Order at 2.]  Only one Georgia statute mentions GNETS (though not by name), O.C.G.A. § 20-2-270.1(c), and only one GDOE regulation addresses it, Ga. Comp. R. & Regs. 160-4-7-.15 (the "GNETS Rule").  Among other things, the GNETS Rule creates eligibility criteria for GNETS services based on those found in the Individuals with Disabilities in Education Act ("IDEA").  Ga. Comp. R. & Regs. 160-4-7-.15(b)–(f).  DOJ does not challenge the substance of the GNETS Rule.

It is undisputed that the State does not provide GNETS services. [Order at 41–52.]  This makes sense.  Under Georgia law, local school districts and regional education service agencies—not GDOE—have the authority to:

- Decide whether to apply for GNETS grants.  Ga. Comp. R. & Regs. 160-4-7-.15(d).

- Allocate GNETS grants "to facilitate flexible models of service delivery." Ga. Comp. R. & Regs. 160-4-7-.15(5)(b)(10).

- Decide where GNETS grants are utilized on a continuum that ranges from the general education setting to separate facilities owned and operated by local school districts or regional education service agencies.  *Id.* § 160-4-7-.15(4)

- Collaborate with community mental-health service providers.  *Id.* § 160-4-7-.15(5)(b)(11).

- Maintain all school buildings.  O.C.G.A. § 20-2-520.

- Hire and fire individual educators and administrators.  O.C.G.A. § 20-2-943.

- Train educators, including on special education. O.C.G.A. § 20-2-271 (addressing regional education service agencies); Ga. Comp. R. & Regs. 160-4-7-.07(6)(b) (addressing training on least-restrictive environment).

- Evaluate, on an individualized basis, whether GNETS services are necessary for each student who receives them. *Id.* § 160-4-7-.15(4)(a).

- And provide transportation for students receiving GNETS services. *Id.* § 160-4-7-.15(5)(b).

## B. The ADA and DOJ's "Integration Mandate" regulation.

Title II applies to public entities like states, and its operative provision contains only "general language." *Olmstead*, 527 U.S. at 615 (Kennedy, J., concurring). It states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132. A "qualified individual with a disability" is someone who is otherwise eligible for "the receipt of services or the participation in programs or activities *provided* by a public entity." 42 U.S.C. § 12131(2) (emphasis added). The ADA charged DOJ to "promulgate regulations … that implement" its text, 42 U.S.C. § 12134(a), but the statute does not authorize DOJ to "give meaning to a particular statutory term" as other federal laws do. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024).

In 1991, DOJ promulgated the Integration Mandate to address

discrimination in the form of "undue institutionalization." *Olmstead*, 527 U.S. at 597 (plurality op.)  At that time, DOJ described Title II as covering "two major categories of programs or activities" outside of employment: (1) "those involving general public contact as part of ongoing operations *of the entity*," and (2) "those *directly* administered by the entities for program beneficiaries and participants." Nondiscrimination on the Basis of Disability in State and Local Government Services, 56 FR 35694-01 (July 26, 1991) (emphases added).  The regulation, however, goes further and requires public entities to "*administer* services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d) (emphasis added).  The Integration Mandate does not define the term "administer," nor does the word appear in the text of Title II.  *Id.*

## C.   The district court's order and certification of questions for immediate appeal.

DOJ's claims against the State contend that the State "administers" GNETS services in a manner that, categorically, results in students not receiving special-education services in the most integrated setting according to the student's needs, and this also denies students access to equal education services.  [*Id.*] at ¶¶ 68-72.

After discovery, DOJ moved for partial summary judgment to establish the State "administers" GNETS services.  [Doc. 395-1] at 3.

The State also moved for summary judgment on several grounds, including: (1) the Integration Mandate expanded liability beyond the text of Title II; (2) DOJ failed to establish traceability because any actionable conduct arose from local education officials' exercise of their constitutional and statutory authority; (3) the State's alleged "administration" did not cause the alleged injuries; and (4) an order against the State would not bind local officials or redress any alleged injury.  [Doc. 429-1] at 18–20.  The district court granted DOJ's motion for partial summary judgment and denied the State's motion for summary judgment.  *See generally*, Order.

Shortly afterwards, a different judge in the same district court *granted* the State's motion for summary judgment, which raised the same arguments in a case where the plaintiffs had access to and relied on much of the same evidence.  *GAO*, 2024 WL 4340034 at *1. The State then moved the district court in this case to reconsider and/or clarify parts of the Order, to certify six questions for immediate appellate review, and to stay the case.  *See generally*, Certification.  The Certification declined to reconsider and/or clarify the Order, but it certified two questions for this Court's consideration and stayed all proceedings pending review.  *Id.* at 7.  The State then timely filed this Petition.

## ARGUMENT

The Court should grant permission for the State to appeal because

each certified question doubtlessly presents (1) important questions of law; (2) about which there are substantial grounds for differences of opinion; and (3) dispositive issues in this litigation.  28 U.S.C. § 1292(b); *McFarlin*, 381 F.3d at 1257.

## I.    The Certified Questions present important legal questions.

The important questions here involve standing and statutory construction.  They are "pure question[s] of law" that can be decided "quickly and cleanly without having to study the record."  *McFarlin*, 382 F.3d at 1256, 1258.  They do not require this Court to consider whether the State "administers" GNETS services but rather what that term means and whether it is consistent with the ADA.

These issues are also dispositive.  If "administer" simply means "provide," or if DOJ's regulation goes beyond the statute, then its claim fails because the State does not provide GNETS services.  If DOJ lacks standing, its claim also fails.

The only remaining question is whether these issues are debatable.  They are.  Four district courts in this Circuit read the ADA and the Integration Mandate differently; they also disagree on this Court's recent precedent on standing, and they are split on the scope of permissible remedies.

## II.    Intra- and inter-Circuit splits confirm that it is debatable whether a state can be held liable for "provid[ing]" services it does not actually provide.

The conflicting authority—within and outside this Circuit—

demonstrate the existence of "substantial ground[s] for difference[s] of
opinion" on the immediate questions of statutory construction and
standing.

### A. The Order misapplies the ADA's statutory text.

Statutory construction questions begin with the "language of the
statute." *United States v. Fla.*, 938 F.3d 1221, 1226 (11th Cir. 2019)
("*Florida II*"). Here, that statute limits liability to the *provision* of
services, while the Integration Mandate creates liability based on the
undefined *administration* of services. Properly defining what it means
to "administer" a service is critical here: the term is either synonymous
with "provide" as used in Title II, or it means something substantively
different. If the latter, the enforceability of the Integration Mandate is
questionably, particularly after *Loper Bright* and *Kisor v. Wilkie*, 588
U.S. 558 (2019). The State contends the district court got this statutory
analysis incorrect, and at the very least review is warranted now in the
light of the substantial ground for difference of opinion on the issue.
*See* 28 U.S.C. § 1292(b).

On the one hand, strong textual reasons weigh against an
interpretation of the Integration Mandate that would impose liability
on the State here. Title II only imposes liability for discrimination in
services "provided" by a public entity; it does not use the term
"administer." 42 U.S.C. §§ 12131(2) (defining qualified individual with
a disability in Title II), 12132 (Title II's prohibition on discrimination).

– 11 –

This stands in contrast to Titles I and III of the ADA, which explicitly address the "administration" of services and programs. *See* 42 U.S.C. §§ 12112(b)(3) and (b)(7) (prohibiting discrimination through "administration" in Title I); 42 U.S.C. § 12182 (b)(1)(D) (same for Title III). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation and quotations omitted); *see also Delgado v. U.S. Atty. Gen.*, 487 F.3d 855, 862 (11th Cir. 2007).

Consistent with that statutory language, DOJ at one time agreed that the Integration Mandate only imposed liability on public entities for discrimination that occurred in services they directly provided. When promulgating the Integration Mandate in 1991, DOJ described its intent as addressing programs or activities "*directly* administered by the entities for program beneficiaries and participants" in the name of preventing the "*[p]rovision* of segregated accommodations and services." Nondiscrimination on the Basis of Disability in State and Local Government Services, 56 Fed. Reg. 35694-01, 35696, 35703 (July 26, 1991) (emphases added).[4]

---

[4] DOJ's equal-opportunity claim, meanwhile, relies on regulatory language explicitly about "providing" benefits and services. 28 C.F.R.

Nothing in *Olmstead* caused anyone to think differently. No one there challenged the scope of the Integration Mandate; the State directly provided the hospital services at issue, and the Supreme Court was still applying *Chevron* deference. 527 U.S. at 591, 597 (plurality op.) Thus, there was no indication that a state like Georgia could be held liable for passing through funds to non-party localities which provide the services, *much less* when those local governments maintain complete discretion on how, when, and where to do so.

The district court, however, did not engage in this textual analysis, instead rejecting the State's argument for two reasons.

*First*, it held no court had adopted the State's interpretation. [Order at 42.] True enough, but this does not mean the State is wrong. Given that this case represents the "[f]irst [c]hallenge" of its kind, it is not surprising that few courts have considered the new theory DOJ advances. *See supra* at n.1. And the few courts that have done so have reached different conclusions on the general limits of Title II liability. *See* 28 U.S.C. § 1292(b).

Further, authority does suggest Title II is more limited than DOJ contends. For example, one judge in this Circuit described the ADA as the State does: regulating "any program *run* by a public entity." *United*

_____

§ 35.130(b)(1). Thus, if the Integration Mandate is limited to addressing services "provided" by public entities, this claim also fails.

*States v. Sec'y Florida Agency for Health Care Admin.*, 21 F.4th 730, 735 (11th Cir. 2021) (J. Pryor, J. writing in support of denying rehearing *en banc*). And before *Kisor* and *Loper Bright*, another district court in the Northern District of Georgia decided another part of DOJ's regulation exceeds statutory authority. *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1340 (N.D. Ga. 2017) (holding 28 C.F.R. § 35.130(g) exceeds DOJ's authority). *See also Friends of Trumbull v. Chicago Bd. of Educ.*, 123 F. Supp. 3d 990, 998 (N.D. Ill. 2015) (suggesting same).

Circuit courts have also split on the reach of Title II liability. *See Mississippi*, 82 F.4th at 396; *Bacon*, 475 F.3d at 642. While not an Integration Mandate case, the Fourth Circuit in *Bacon* held that the ADA does not impose "strict liability" against parties who merely oversee services. 475 F.3d at 639-40, 642.

The Sixth Circuit was the first to consider the Integration Mandate after *Kisor*, but no one there challenged the breadth of the regulation. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 461 (6th Cir. 2020). Nevertheless, *Kisor* led Judge Raedler to partially dissent: none of "the pre-*Kisor* cases relied upon in the majority opinion carry weight." *Id.* at 470 (Raedler, J., dissenting in part).

The Fifth Circuit then decided *Mississippi* and reversed a district court that deferred to the same DOJ interpretation here and noted that prior precedent—including the cases cited in the Order—applied *Auer*

– 14 –

deference and have been "superseded" by *Kisor*.[5]  82 F.4th at 394.

*Mississippi* also uniquely recognized what DOJ does not dispute:

Justice Kennedy's more limiting concurrence in *Olmstead* controls.  *Id.*

at 394 n.11 (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)).

The concurrence urged courts to be "cautious" in cases like this one for

several reasons, including the "[g]rave constitutional concerns" of

federalism they present.  *Olmstead*, 527 U.S. at 615, 612 (Kennedy, J.,

concurring).  Emphasizing the split in authority on these issues, the

Order considered *Mississippi* unpersuasive, whereas *GAO* cited it

approvingly.  *Compare* Order at 42 *with GAO,* 2024 WL 4340034, at *6.

    *Second*, the district court disagreed with the State's interpretation

based on non-binding and almost exclusively pre-*Kisor* decisions that

held states could not avoid ADA liability by "contracting-out" public

services to third parties.  [Order at 42 (citing *Florida III*, 682 F.

Supp.3d at 1185; 28 C.F.R. § 35.130(b)(1), (3)) (further citations

omitted).]  The significance of *Kisor* notwithstanding, this is not a

contracting-out case.  The State does not contract with local school

districts to provide special-education services, and local education

officials are not acting as agents of the State when they provide them to

students.  Local officials are carrying out their duties under Georgia's

constitution and statutes.  *See* Ga. Const. Art. VIII, Sec. V, Par. I;

---

[5] DOJ did not seek certiorari from the Supreme Court in *Mississippi*.

O.C.G.A. § 20-2-152(b).  None of the cases cited in the Order involved
this circumstance.  All but two involved contracts for Medicaid services,
and the others addressed state-only initiatives.[6]

Similarly, by applying *Auer* deference, none of those cases
considered that, unlike Titles I and III of the ADA, nothing in the text
of Title II itself addresses contracting for services.  42 U.S.C. §§ 12132
(Title II), 12112(b)(2) (Title I), 12182(b)(1)(A), (b)(1)(D) (Title III).  At
the very least, these distinctions make DOJ's statutory argument
debatable.

### B. District courts in this Circuit have split on the Article III standing questions presented by this Petition.

But even if this Court resolved these statutory questions in DOJ's
favor, DOJ still has not satisfied its "bedrock constitutional

---

[6] *See Florida III*, 682 F. Supp. 3d at 1193 (contracts about Medicaid-
funded services); *Price v. Shibinette*, 21-CV-25-PB, 2021 WL 5397864,
at *2 (D.N.H. Nov. 18, 2021) (same); *Murphy by Murphy v. Minnesota
Dep't of Human Servs.*, 260 F. Supp. 3d 1084, 1102 (D. Minn. 2017)
(Medicaid waiver services and relying on general oversight authority);
*Day v. D.C.*, 894 F. Supp. 2d 1, 8 (D.D.C. 2012) (contracts for Medicaid
waiver services); *State of Connecticut Office of Prot. & Advocacy for
Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 276 (D.
Conn. 2010) (same); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 287
(E.D.N.Y. 2008) (same); *Parrales v. Dudek*, 4:15CV424–RH/CAS, 2015
WL 13373978, at *1 (N.D. Fla. Dec. 24, 2015) (same). *See also M.G. v.
New York State Office of Mental Health*, 572 F. Supp. 3d 1, 12
(S.D.N.Y. 2021) (state programs implemented by municipal and
private entities); *Disability Advocates, Inc. v. Paterson*, 598 F. Supp.
2d 289, 317 (E.D.N.Y. 2009) (state contracts for housing assistance).

requirement" of demonstrating Article III standing to pursue its regulatory claims against the State. *United States v. Texas*, 599 U.S. 670, 675 (2023); [Doc. 448-1] at 3 (DOJ agrees it must establish Article III standing).[7]

While the district court did not certify a question regarding injury, the questions do raise the issues of traceability and redressability, which focus on "who caused the injury and how can it be remedied." *City of So. Miami v. Governor*, 65 F.4th 631, 640 (11th Cir. 2023). And, DOJ's burden is not slight but "more difficult" than usual cases, because DOJ's theory challenges the State's alleged "unlawful regulation (or lack of regulation) of someone else." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). For example, the State's general "supervisory authority" is usually insufficient for traceability and redressability purposes. *See, e.g.*, *City of So. Miami*, 65 F.4th at 640; *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1204 (11th Cir. 2021). The possibility of coercion alone is also insufficient; a

---

[7] DOJ argued it had satisfied Article III via an injury to its Article II interests. [Doc. 448-1] at 4. But that authority does not satisfy Article III's injury requirement here. As Judge J. Pryor explained in her concurral in the denial of rehearing *en banc* in *Secretary Florida Agency for Health Care Administration*, any statutory standing DOJ has under the ADA arises on a representative basis. 21 F.4th at 732–34, 737. DOJ cannot assert an ADA claim in its own right.

defendant's ability to coerce a third party satisfies traceability only when the exercise of coercive power can limit the absent party's challenged discretion. *Berrocal v. Att'y Gen. of United States*, 136 F.4th 1043, 1050–51 (11th Cir. 2025) (citation omitted). *Accord GAO*, 2024 WL 4340034, at *13, 20. And, the exercise or non-exercise of such authority must itself be the cause of the alleged harm. *City of So. Miami*, 65 F.4th at 643. *Accord GAO*, 2024 WL 4340034, at *12.

The district court and three others in this Circuit have applied these principles and cited much of the same authority in four Title II cases like this one, and they divided over whether a state's general supervisory authority satisfies standing. The Order and *Florida III* said it does, and the *GAO* and *Kritner* courts said "no." *See generally* Order, *Florida III*, 682 F. Supp.3d at 1185; *Kritner*, 2025 WL 451836 at *1; *GAO*, 2024 WL 4340034 at *1.

More specifically, the district court held that State "administers" the program by promulgating the GNETS Rule;[8] disbursing GNETS grants to those local school districts that apply for them, and reviewing how GNETS services are provided. [Order at 45-52.] The Order did not, however, identify how such "administration" caused the alleged

---

[8] *But see Support Working Animals, Inc.*, 8 F.4th at 1204 (deciding an "official's role in crafting duly enacted legislation" cannot satisfy the traceability requirement); *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1257 (11th Cir. 2020) (applying same rule to rulemaking).

– 18 –

injuries or could be addressed by an order against the State alone, but it found that the "administration" satisfied the traceability and redressability requirements.[9]  [*Id.* at 39–41, 52.]  The district court's analysis relied heavily on the other district court decision going against a state, *Florida III*, which concluded ADA injuries are traceable to states that enter detailed contracts with third parties who directly provide the challenged services.  682 F. Supp.3d at 1185, 1192–95; [Order at 42-45].

When considering identical arguments on largely the same record, the *GAO* court found the plaintiffs lacked standing, because the State does not "administer" GNETS services.  *Id.* at *18 n.18.  In addition to "simply disagree[ing]" with the Order on administration, the *GAO* court also disagreed with the Order's standing analysis because:

> the local, constitutionally elected school officials decide whether to apply for voluntary GNETS grants, whether to refer an individual student to GNETS, whether to physically segregate any GNETS students, and what services to provide students within GNETS. The State doesn't force local actors to do any of that. Nor could it under the GNETS Rule.

*Id.* at *13 (cleaned up) (citing *Jacobson*, 974 F.3d at 1253–54).  And on redressability, the *GAO* court disagreed with the Order again by

---

[9] The district court denied the State's motion to clarify what remedies it contended established redressability.  (Certification at 1-2.)

concluding that an order against the State would not bind absent local education officials' decisions on "how and where they educate GNETS students." 2024 WL 4340034 at *20.

The two district courts also applied *Jacobson* differently: the Order said it was distinguishable on the facts, and the *GAO* court deemed its analysis—on general authority and the need to link injuries to the acts of the defendant—dispositive. *Id.* at *12, 14, 17, 18, 20. On a motion to dismiss, the *Kritner* court applied Alabama law and reached the same conclusions as the *GAO* order based, in part, on its reading of *Jacobson*. 2025 WL 451836 at *1, 4–5, 8–14.

Indeed, when applying *Jacobson*, the *GAO* and *Kritner* courts sound a lot like this Court in *City of South Miami*. There, plaintiffs sued Florida state officials for the potential discriminatory acts of local law enforcement officers, and this Court said that choice deprives the plaintiffs of standing on the grounds of traceability and redressability: "On the ground, where it counts, local officials enforce S.B. 168. Local officials commit the alleged profiling. Local officials cooperate with federal officials … Local officials transport detainees." *Id.* at 631, 642. *Compare GAO*, 2024 WL 4340034 at *13. And, unlike the Order, *City of South Miami*, *GAO*, and *Kritner* each required plaintiffs to show that state officials' general supervisory authority caused the injuries at issue. *Compare City of So. Miami*, 65 F.4th at 643 *with* Order at 39–41. In sum, two district court opinions in this circuit (the Order and *Florida*

*III*) have applied strict liability and found traceability and redressability are satisfied by general supervisory authority in Title II cases; the two others did not.

The second certified question raises another issue of redressability and available relief. In a typical Title II case, the defendant provides the services at issue, so the ability of an injunction to provide redress by mandating reasonable accommodations is rarely an issue. But this is not a typical case. DOJ does not seek to enjoin state officials from enforcing the GNETS Rule or any other state statute or regulation. *Compare GAO* 2024 WL 4340034 at *21. The district court can only order the State to make a "reasonable accommodation," but to redress the alleged discrimination here, the reasonable accommodations must be made by local education officials who would not be bound by an order of the district court and—for purposes of this case—fall outside the State's limited constitutional and statutory authority. *See, e.g.*, O.C.G.A. § 20-2-741(b)(1) (requiring only some schools to accept certain GDOE training). The district court did not identify what an order for DOJ would look like, and by contrast, the *GAO* court held that federal courts lack authority to "mandate alternative funding or some other affirmative act by the State." 2024 WL 4340034 at *21 (citing *Jacobson*, 974 F.3d at 1255)). Thus, redressability presents another issue that is plainly debatable.

### III. There is a debatable question as to whether Title II imposes a causation requirement more stringent than the district court imposed here.

The last issue raises another statutory issue applicable only if this Court decides the alleged injuries here are traceable to the State: "whether Title II imposes liability on a state only for discrimination it directly causes." (Certification at 6.)  *Olmstead* does not address this question other than in Justice Thomas's dissent.  527 U.S. at 626 (Thomas, J., dissenting).  This Court adopted a "but for" standard of causation in ADA cases, albeit not in the context of *Olmstead*-like claims.  *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 (11th Cir. 2008).  District courts in this circuit have split on the issue and so too have the circuit courts.

The district court analyzed causation through the lens of traceability but not as a matter of statutory law, which is more difficult to establish.  Order at 43; *but see Berrocal*, 136 F.4th at 1049 (analyzing Article III and proximate cause differently).  On the merits, the *Florida III* court held "[c]ausation is *not* an element of an *Olmstead* case."  682 F. Supp. 3d at 1185 (emphasis in original).  *GAO* went the other way, but on traceability; it held the plaintiffs failed to satisfy Article III's lesser burden by failing to show the State's acts "caused … unnecessary segregation."  2024 WL 4340034 at *11.  *Accord Kritner*, 2025 WL 451836 at *5 (addressing traceability).

Circuit courts have also adopted different standards in Integration

– 22 –

Mandate cases.  A divided panel of the D.C. Circuit decided that causation is not an independent element of an *Olmstead* claim.  *Brown v. D.C.*, 928 F.3d 1070, 1087 (D.C. Cir. 2019).  By contrast, the Third Circuit requires *Olmstead* plaintiffs to show but-for causation.  *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 (3d Cir. 2013).  The Fourth Circuit did too in *Bacon*, but it is not an Integration Mandate case.  475 F.3d at 638–39.  The Second Circuit landed somewhere in between: it held that but for causation applies, but that it is satisfied if the disability is a "substantial cause" of an inability to gain access to services.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2d Cir. 2003).

## CONCLUSION

For the foregoing reasons, the State of Georgia respectfully asks this Court to grant this Petition and review at least the certified questions on interlocutory review.

Respectfully submitted this 22nd day of September, 2025,

*/s/ Josh Belinfante*

| | |
|---|---|
| Christopher M. Carr | Josh Belinfante |
| *Attorney General* | Melanie L. Johnson |
| Bryan K.Webb | Edward A. Bedard |
| *Deputy Attorney General* | Danielle Hernandez |
| Katherine P. Stoff | Javier Pico Prats |
| *Sr. Assistant Attorney General* | Anna Edmondson |
| Kristen L. Settlemire | ROBBINS ALLOY BELINFANTE |
| *Sr. Assistant Attorney General* | LITTLEFIELD, LLC |
| OFFICE OF THE ATTORNEY GENERAL | 500 14th St. NW |
| 40 Capitol Square, SW | Atlanta, GA 30318 |
| Atlanta, Georgia 30334 | T:(678) 701-9381 |

*Counsel for Defendant-Petitioner*
*State of Georgia*

– 24 –

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. Rule 5(c) and 32(c) because it contains 5,200 words as counted by the word-processing system used to prepare the document.

This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because the document was prepared in Microsoft Word using the proportionally-spaced Century Schoolbook typeface in a 14-point font.

*/s/ Josh Belinfante*
Josh Belinfante