# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

STATE OF GEORGIA,

*Defendant-Petitioner,*

*v.*

UNITED STATES OF AMERICA,

*Plaintiff-Respondent.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 1:16-CV-03088

## RESPONSE TO DEFENDANT'S PETITION FOR PERMISSION TO FILE CERTIFIED INTERLOCUTORY APPEAL

THEODORE S. HERTZBERG
  United States Attorney
  Northern District of Georgia

AILEEN BELL HUGHES
  Georgia Bar No. 375505
  Assistant U.S. Attorney
  Office of the United States
  Attorney
  600 U.S. Courthouse
  75 Ted Turner Drive, SW
  Atlanta, GA 30303
  (404) 581-6000

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
Principal Deputy Assistant
Attorney General

ANDREW G. BRANIFF
JOSHUA R. ZUCKERMAN
Attorneys
Department of Justice
Civil Rights Division
Appellate Section - Ben Franklin
Station - P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Counsel hereby certifies that in addition to those identified in the certificate filed by the defendant-petitioner, the following people may have an interest in the outcome of this appeal:

Braniff, Andrew G., U.S. Department of Justice, Civil Rights Division

Buchanan, Ryan K., former United States Attorney

Erskine, Kurt R., former United States Attorney

Hertzberg, Theodore S. Hertzberg, United States Attorney

Mendel, Gabriel, Assistant United States Attorney

Moultrie Jr., Richard S., former Acting United States Attorney

Pak, Byung J., former United States Attorney

Zuckerman, Joshua R., U.S. Department of Justice, Civil Rights Division

United States of America, Respondent

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

s/Aileen Bell Hughes
AILEEN BELL HUGHES

Date: October 2, 2025

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure
    Statement.................................................................................C-1

Table of Contents............................................................... i

Table of Authorities............................................................ ii

Introduction...................................................................... 1

Certified Questions Presented ......................................... 2

Statement of the Case...................................................... 3

Legal Standard ................................................................ 6

Argument ........................................................................ 7

1.  Answering the Certified Questions Would Not Materially
    Advance This Litigation. ............................................. 7

2.  Neither Question Is a Controlling Question of Law. .............. 10

    A.  Question 1 Is Not a Controlling Question of Law............. 11

    B.  Question 2 Is Not a Controlling Question of Law............. 12

3.  There Is No Substantial Ground for Difference of Opinion on
    Either Question ....................................................... 15

Conclusion..................................................................... 22

Certificate of Compliance and Service ......................................... 24

# TABLE OF AUTHORITIES

**Federal Cases**

*Access Now, Inc. v. Sw. Airlines Co.,*
   385 F.3d 1324 (11th Cir. 2004) ...................................................... 18

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.,*
   219 F.3d 674 (7th Cir. 2000) .......................................................... 8

*Bacon v. City of Richmond,*
   475 F.3d 633 (4th Cir. 2007) ........................................................ 17

*Brown v. District of Columbia,*
   928 F.3d 1070 (D.C. Cir. 2019)..................................................... 21

*CG v. Pennsylvania Department of Education,*
   734 F.3d 229 (3d Cir. 2013) .................................................... 21, 22

*Couch v. Telescope, Inc.,*
   611 F.3d 629 (9th Cir. 2010) ........................................................ 16

*Georgia Advocacy Office et al. v. Georgia,*
   2024 WL 4340034 (N.D. Ga. Sept. 27, 2024) .............18, 19, 20, 21

*Hamilton v. Southland Christian Sch., Inc.,*
   680 F.3d 1316 (11th Cir. 2012) ....................................................... 9

*Henrietta D. v. Bloomberg,*
   331 F.3d 261 (2003) ...................................................................... 22

*In re Auto Dealer Servs., Inc.,*
   81 B.R. 94 (M.D. Fla. 1987) ............................................................ 8

*In re Int'l Mgmt. Assocs., LLC,*
   2019 WL 2250638 (N.D. Ga. Feb. 27, 2019)................................... 8

*Kisor v. Wilke,*
   588 U.S. 558 (2019) ...................................................................... 17

*Kritner v. Ala. Dep't of Human Res.,*
   2025 WL 451836 (M.D. Ala. Feb. 10, 2025) ........................... 19, 20

*Marbury v. Madison,*
   5 U.S. 137 (1803)........................................................................... 14

*McFarlin v. Conseco Servs., LLC,*
   381 F.3d 1251 (11th Cir. 2004) ........................... 7, 8, 10, 13, 15, 22

*Moorman v. UnumProvident Corp.,*
   464 F.3d 1260 (11th Cir. 2006) ....................................................... 6

*New Directions Treatment v. City of Reading,*
    409 F.3d 293 (3d Cir. 2007) ........................................................ 22

*North Carolina v. Rice,*
    404 U.S. 244 (1971) ..................................................................... 14

*OFS Fitel, LLC. v. Epstein,*
    549 F.3d 1344 (11th Cir. 2008) .................................................... 22

*Pearson v. Kemp,*
    831 F. App'x 467 (11th Cir. 2020) ............................................... 11

*Scott v. Advanced Pharma Consultants, Inc.,*
    84 F.4th 952 (11th Cir. 2023) .................................................. 6, 17

*Todd v. Carstarphen,*
    236 F. Supp. 3d 1311 (N.D. Ga. 2017) ........................................ 17

*United States v. Florida,*
    682 F. Supp.3d  (S.D. Fla. 2023).............................................. 18, 19

*United States v. Florida,*
    938 F.3d 1221 (11th Cir. 2019) ...................................................... 5

*United States v. Sec'y Florida Agency for Health Care Admin.,*
    21 F.4th 730 (11th Cir. 2021) ...................................................... 17

*Waskul v. Washtenaw County Community Mental Health,*
    979 F.3d 426 (6th Cir. 2020) ........................................................ 17

*Weber v. United States,*
    484 F.3d 154 (2d Cir. 2007) ......................................................... 16

**Federal Statutes**

28 U.S.C. § 1292(b)...................................................................... 10, 16
42 U.S.C. § 1292(b).......................................... 1, 2, 6, 7, 8, 12, 22, 23
42 U.S.C. § 12131 ............................................................................ 1, 3
42 U.S.C. § 12132 ............................................................................ 3, 11

**State Statutes**

Ga. Const. art. VIII, § 5, ¶ VII(a)........................................................ 4
Ga. Const. Art. VIII, Section V, Para. VII......................................... 20
O.C.G.A. § 20-2-152(a)....................................................................... 4
O.C.G.A. § 49-5-220(a)(6) ................................................................ 21

## Federal Rules

Fed. R. App. P. 27(a)(2)(B) .................................................. 24
Fed. R. App. P. 27(d)(2) ...................................................... 24
Fed. R. App. P. 32(a) .......................................................... 24
Fed. R. App. P. 32(a)(5) ...................................................... 24
Fed. R. App. P. 32(a)(6) ...................................................... 24
Fed. R. App. P. 32(f) .......................................................... 24

## Federal Regulations

28 C.F.R. § 35.130(d) .......................................................... 3
28 C.F.R. § 1350 ................................................................. 3

## State Regulations

Ga. Comp. R. & Regs. § 160-4-7-.15 .................................... 4
Ga. Comp. R. & Regs. § 160-4-7-.15(1)(f) ............................. 4
Ga. Comp. R. & Regs. § 160-4-7-.15(5)(c) ............................. 5

## Other Authorities

16 *Charles Alan Wright & Arthur AR. Miller,*
    Fed. Prac. & Proc. Juris. § 3930 (3d ed.) ........................ 10

## INTRODUCTION

The United States commenced this action in 2016, alleging that the State of Georgia discriminates against students with behavior-related disabilities by relegating them to a segregated and second-class educational system, in violation of the Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131 *et seq.* After nine years of litigation, this case is finally ready for trial. But Georgia asks this Court to further prolong proceedings by answering two questions that the district court certified for interlocutory appeal under 42 U.S.C. § 1292(b). The questions, as set out below, concern whether the ADA limits liability to discrimination caused by a public entity, and whether a state is liable for only the discrimination it directly causes. As to the first question, Georgia acknowledges that "no court ha[s] adopted [its] interpretation" of Title II as limiting liability to providers of programs or activities. Pet. 13. As to the second, multiple courts have held that the United States has standing to bring a Title II claim against a state that plays a role in administering a program or activity for the disabled, directly or not. This appeal will serve no purpose other than to further delay a trial that already has faced substantial delays.

This Court should deny Georgia's petition. Georgia offers no explanation as to how answering these questions would "materially advance the ultimate termination of the litigation." 42 U.S.C.

§ 1292(b).  If anything, an excursion to this Court would slow this case down because there is nothing left for the district court to do but hold a trial.  Nor has Georgia identified a "controlling question of law."  *Id.*  Each certified question is not outcome-determinative, and one would require this Court to scrutinize the factual record and intricacies of Georgia law.  Moreover, Georgia has not demonstrated a split in authority or other "substantial ground for difference of opinion" about these questions.  *Id.*  Interlocutory review therefore is inappropriate.  The proper course of action is to allow this case promptly to proceed to trial, after which the parties may seek review of any final judgment.

## CERTIFIED QUESTIONS PRESENTED

1.     Whether, for purposes of Article III standing or on the merits, Title II of the ADA imposes liability for "administering" services as set forth in DOJ's regulation known as the "Integration Mandate," or whether the text of the ADA limits liability to discrimination caused by "programs or activities provided by a public entity."

2.     Whether—for purposes of Article III's requirement[s] of demonstrating traceability and redressability and on the merits—Title II imposes liability on a state only for discrimination it directly causes, and if a remedial order is limited to restraining the enforcement of an allegedly discriminatory law or policy.

## STATEMENT OF THE CASE

The United States filed this action under Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.* Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. The Department of Justice's Integration Mandate further provides that a "public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

The United States alleges that the State of Georgia discriminates against thousands of public-school students with behavior-related disabilities through the State's operation, administration, and funding of the Georgia Network for Educational and Therapeutic Support ("GNETS") Program. GNETS is a system of twenty-four programs exclusively for children with behavioral disabilities, operated in their own buildings or in separate classrooms of general-education schools. *E.g.,* Dkt. 496 at 5–7.[1] The United States alleges (1) that Georgia violates the Integration Mandate, 28 C.F.R. § 1350, by administering

---

[1] "Dkt. __ at __" refers to the docket entry and page number of documents filed in the district court, No. 1:16-cv-03088 (N.D.Ga.).

its mental-health and therapeutic-educational-service system in a manner that unnecessarily segregates students with behavior-related disabilities, and (2) that Georgia violates Title II by relegating the students in GNETS to inferior educational opportunities compared to their general-education peers.

State law provides Georgia with broad control over GNETS, while local or regional education agencies are responsible for the day-to-day delivery of services within general-education schools or classrooms. *See* Dkt. 496 at 46–48 (detailing the extent of the State's control). Georgia has authority to "define education policy" and establish regulations for the operation of "special schools," including those in the GNETS Program. *E.g.*, Ga. Comp. R. & Regs. § 160-4-7-.15(1)(f); Ga. Const. art. VIII, § 5, ¶ VII(a). The State Board of Education is responsible for creating "classification criteria for each area of special education to be served on a state-wide basis" and adopting "criteria used to determine eligibility of students for state funded special education programs," such as GNETS. O.C.G.A. § 20-2-152(a). Georgia's "GNETS Rule" establishes the conditions governing the provision of State aid for GNETS schools or classrooms. Ga. Comp. R. & Regs. § 160-4-7-.15. GNETS regional-program directors ensure services are delivered within GNETS schools or classrooms pursuant to the State's rules and subject

to the State's oversight. *E.g.*, Ga. Comp. R. & Regs. § 160-4-7-.15(5)(c) (establishing reporting requirements for local and regional agencies).

Georgia unsuccessfully moved to dismiss the complaint, arguing that the State's control over the GNETS Program was not a sufficient basis for liability.[2] Dkts. 61; 94. In denying the motion to dismiss, the district court explained that the United States plausibly alleged that Georgia controls and administers GNETS and held that a public entity that "administers" a program or activity may be liable under Title II. Dkt. 61 at 12-14. The district court further held when rejecting Georgia's motion for judgment on the pleadings that the United States sufficiently pleaded that the alleged injuries were traceable to the State. Dkt. 94 at 11-13. The district court reiterated that the United States plausibly alleged that Georgia operates and administers GNETS. *Id.*

Discovery closed in October 2023, Dkt. 394, and the parties moved for summary judgment, Dkts. 395, 429. The district court denied Georgia's motion and granted partial summary judgment in the United States' favor. Dkts. 496 (sealed), 499 (redacted). The district court

---

[2] The district court stayed this matter for over two years pending the outcome of an appeal that challenged whether the United States may enforce Title II of the ADA. Dkt. 40. The district court lifted the stay, Dkt. 45, after this Court held in *United States v. Florida*, 938 F.3d 1221 (11th Cir. 2019), that the United States in fact has authority to enforce Title II of the ADA.

found that Georgia administers GNETS and therefore may be held liable under Title II, and that the United States suffered injuries sufficiently traceable to Georgia's control and redressable by an injunction of Georgia's actions. Dkt. 496 at 38-52. In October 2024, Georgia moved to certify an order for interlocutory appeal. Dkt. 505. A year later, the district court granted the motion in relevant part and certified two questions. Dkt. 523. While Georgia's motion was pending, the parties jointly filed a proposed pretrial order identifying trial witnesses and exhibits. Dkt. 515. The parties anticipate that the trial will take no more than fifteen days. Dkt. 515 at 17. This case is now ready for trial.

## LEGAL STANDARD

Section 1292(b) is a "statutory exception[] to the final judgment rule." *Scott v. Advanced Pharma. Consultants, Inc.*, 84 F.4th 952, 962 (11th Cir. 2023). It allows a court of appeals to "permit an appeal to be taken" from an "order otherwise not appealable" that a district judge certifies "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 42 U.S.C. § 1292(b). "Under § 1292(b), appellate review, even for certified questions, is discretionary." *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1272 (11th Cir. 2006).

The petitioner has the "burden of persuading" this Court "that a question of law meeting the requirements of § 1292(b) clearly is presented." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). If a petitioner "fail[s] to carry [its] burden," the petition should be denied. *Id.* at 1263.

## ARGUMENT

This case is not one of the "exceptional cases" that satisfies Section 1292(b)'s rigorous standard. *McFarlin*, 381 F.3d at 1256. Without any supporting analysis, the district court determined that the two certified questions "are controlling questions of law with the potential for dispositively concluding this litigation." Dkt. 523 at 5. But an interlocutory appeal of these questions will not materially advance the termination of litigation, and neither question presents a controlling question of law or substantial grounds for difference of opinion. This Court accordingly should deny the Petition.

### 1. Answering the Certified Questions Would Not Materially Advance This Litigation.

This Court may exercise jurisdiction over this interlocutory appeal only if doing so would "materially advance the ultimate termination of the litigation." 42 U.S.C. § 1292(b). Resolving the certified questions would not "materially advance" the resolution of this case. A certified question is capable of materially advancing litigation when it "would

serve to avoid a trial or substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. "This is not a difficult requirement to understand." *Id.* The resolution of the question "must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).

As a case gets closer to trial, the "materially advances" requirement is increasingly less likely to be satisfied because there is less litigation left to speed up. District courts in this Circuit therefore have determined that "an interlocutory appeal will not 'materially advance the ultimate termination of litigation" when discovery has concluded and a case is ready for trial." *In re Int'l Mgmt. Assocs., LLC*, 2019 WL 2250638, at *2 (N.D. Ga. Feb. 27, 2019); *see also In re Auto Dealer Servs., Inc.*, 81 B.R. 94, 97 (M.D. Fla. 1987) ("The Bankruptcy Court is approaching trial on the damages; discovery and other pre-trial matters have been completed. At this stage an interlocutory appeal would only delay the litigation and ultimately prove more costly than going forward with trial."). Such is the case here. Fact and expert discovery have been closed for nearly two years, the district court has ruled on the parties' summary-judgment motions and motions in limine, and this case is ready for trial. A months-long detour to the Eleventh Circuit very well could delay resolution of this case rather than expedite it.

Interlocutory review of these questions might have materially advanced this case if Georgia filed a Section 1292(b) petition when the district court first held that a public entity that "administers" a program or activity can face Title II liability, Dkt. 61 at 8–14 (May 13, 2020), or when the district court first held that the United States plausibly alleged that "actions within the State's control ... cause the alleged discrimination," Dkt. 94 at 11 (Jan. 15, 2021). Instead, Georgia waited several years—until after the close of discovery and after the district court denied its summary-judgment motion—to seek interlocutory review. This Court should not bless Georgia's half-decade of procrastination and attempt to obtain two bites at the same apple before trial: one in the district court and one on interlocutory review in this Court.

Moreover, Georgia has waived any argument that an interlocutory appeal would materially advance this litigation. The Petition does not even mention this statutory requirement. At most, it devotes two conclusory paragraphs to arguing that Question 1 is "important." Pet. 10. Georgia does not address Question 2 aside from reciting the truism that "If DOJ lacks standing, its claim also fails." *Id.* Georgia's "failure to make arguments and cite authorities in support of" the "materially advance" prong of each certified question "waives it." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012).

And because Georgia has waived the argument that one of the three statutory prerequisites to interlocutory appellate jurisdiction has been satisfied, the Petition should be dismissed.

### 2. Neither Question Is a Controlling Question of Law.

Appellate courts may exercise jurisdiction under Section 1292(b) only if the questions certified by the district court "involve[] a controlling question of law." 28 U.S.C. § 1292(b). The "controlling question" requirement "in part blend[s] with the questions raised by the requirement that an appeal might materially advance the ultimate termination of the litigation." 16 Charles Alan Wright & Arthur AR. Miller, *Fed. Prac. & Proc. Juris.* § 3930 (3d ed.). Indeed, "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259.

Additionally, a "controlling question" must be a question of law, not of fact. A Section 1292(b) appeal "should be reserved[] for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin*, 381 F.3d at 1259. A pure question of law is "an abstract legal issue" that "the court of appeals can decide quickly and cleanly without having to study the record." *Id.* at 1258 (quotation marks omitted). A pure question of law

does not "turn on case-specific inquiries." *Pearson v. Kemp*, 831 F. App'x 467, 472 (11th Cir. 2020).

### A. Question 1 Is Not a Controlling Question of Law.

Answering the question whether Title II imposes liability for "administering" services would not resolve this litigation. Title II protects the rights of "qualified individual[s] with a disability" to "participat[e] in programs or activities provided by a public entity." 42 U.S.C. § 12132. These qualified individuals may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." *Id.*

Neither Title II nor the Integration Mandate defines "administer," So to determine whether Title II confers liability on public entities that "administer" programs or activities, this Court necessarily will have to define "administer." Although Georgia cursorily frames the definition of "administer" as a pure question of law, Pet. 10, this Court cannot define the term without a thorough understanding of Georgia's intricate statutory scheme and the relationship between the State of Georgia and local educational agencies. That is because "administering" is closely intertwined with "providing." Absent a factual understanding of how GNETS functions, this Court may struggle to delineate in the abstract the extent, if any, to which these two terms differ. Without the benefit of a fully developed factual

record and a final judgment from the district court, factual ambiguities would mar this Court's efforts to define statutory and regulatory terms and resolve whether "administering" can confer liability under Title II. That will require close consideration of the record, which is undesirable in the Section 1292(b) posture.

Resolution of Question 1 also likely would not eliminate the need for further proceedings below. In its summary-judgment order, the district court held that Georgia could be liable for violating Title II even as an indirect provider of the therapeutic and educational services in question. Dkt. 496 at 42. The district court accordingly had no need to decide whether Georgia directly provides the therapeutic and educational services at issue. Therefore, even if this Court reverses and holds that only direct providers can be held liable under Title II, the district court would have to determine on remand whether Georgia directly "provides" the services in question, a fact-specific question that would be decided either through renewed summary judgment motions or a trial. And if this Court affirms, then the case would proceed to trial as currently planned. Either way, a trial is necessary, so Question 1 is not "controlling" of this case.

## B. Question 2 Is Not a Controlling Question of Law.

Question 2 is two interrelated sub-questions about causation and relief. It asks (1) whether "Title II imposes liability on a state only for

discrimination it directly causes" and (2) whether a "remedial order is limited to restraining the enforcement of an allegedly discriminatory law or policy." Dkt. 523 at 6. Neither sub-question is "controlling" because resolving these sub-questions would not "serve to avoid a trial." *McFarlin*, 381 F.3d at 1259.

The first sub-question asks whether a Title II plaintiff must show direct causation or whether indirect causation is sufficient. Because the district court did not resolve causation in its summary-judgment order, it necessarily will have to hold a trial to determine whether Georgia caused or did not cause the discrimination in GNETS, for both standing and merits purposes. Answering this sub-question would inform the district court as to the type of causation (direct or indirect) that is necessary for Title II liability, but it would not be controlling of whether Georgia actually caused the discrimination in GNETS.

Georgia's admission that this first sub-question is relevant "only if this Court decides the alleged injuries are traceable to the State," Pet. 22, highlights the unsuitability of this sub-question for interlocutory review. The role of this Court is not to decide the fact-specific question whether the alleged injuries here are traceable to Georgia. At most, this Court may decide, as a pure matter of law, "whether Title II imposes liability on a state only for discrimination it directly causes." Because this first sub-question is relevant only if this

Court first makes an inappropriate case-specific determination as to standing, it is not a pure question of law.

As to the second sub-question, the question of the scope of a remedial order is premature. Trial courts resolve liability before addressing remedy. *See Marbury v. Madison*, 5 U.S. 137, 154 (1803) ("1st. Has the applicant a right ... ? 2dly. If he has a right, and that right has been violated, do the laws of his country afford him a remedy?"). That is a commonsense approach because if a defendant is not liable, then no remedy is necessary. The district court will have to determine a remedy if and only if the United States prevails at trial, in which case either party can appeal a final judgment if it disagrees with the remedy. This Court may not "advis[e] what the law would be upon a hypothetical state of facts" in which Georgia is found liable at trial. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). If Georgia is found liable and if either party disagrees with the remedy, then this Court can address the issue in an ordinary appeal after final judgment. Resolving the second sub-question therefore would not control the merits.

Georgia puts the cart before the horse in framing the second sub-question as a redressability problem. Of course, the "district court did not identify what an order for DOJ would look like." Pet. 21. That is because the substance of an order will depend on the "reasonable accommodations" that Georgia must make, which in turn depend on

the type and extent of discrimination that the United States proves at trial. Whether "a remedial order is limited to restraining the enforcement of an allegedly discriminatory law or policy," as the second sub-question asks, informs the remedy that the district court might issue but does not conclusively resolve redressability for the purposes of standing. Even if a remedial order is limited, the district court could redress the United States' injury by enjoining Georgia's funding of discriminatory programs.

### 3. There Is No Substantial Ground for Difference of Opinion on Either Question

Unable to demonstrate that either certified question would materially advance this litigation or pose a controlling question of law, Georgia devotes the vast majority of its argument to attempting to demonstrate a split in authority as to each question. No such split exists. There is no substantial ground for difference of opinion when courts are in "complete and unequivocal agreement" as to the meaning of the law, *McFarlin*, 381 F.3d at 1258, as they are with regard to each certified question.

### a. There Is No Substantial Ground for Difference of Opinion on Question 1

*Merits.* As noted above, Georgia acknowledges that "no court ha[s] adopted [its] interpretation" of Title II as limiting liability to providers

of programs or activities. Pet. 13. It nevertheless argues that this court should decide Question 1 because the district court "got th[e] statutory analysis incorrect" by improperly "defining what it means to 'administer' a service." *Id.* at 11. And because "this case represents the first challenge of its kind," Georgia claims there is room for disagreement as to whether Title II imposes liability on states that administer discriminatory programs or merely on public entities that provide the programs. *Id.* at 13 (cleaned up).

Georgia essentially argues that this Court should exercise Section 1292(b) jurisdiction only because the district court arrived at the wrong conclusion on a question of first impression. Pet. 11–13. That is not how Section 1292(b) works. "Congress did not intend 28 U.S.C. § 1292(b) to serve an error-correction function," *Weber v. United States*, 484 F.3d 154, 160 (2d Cir. 2007), so Georgia's "strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference,'" *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). The existence of a question of first impression also does not suffice. "[J]ust because a court is the first to rule on a particular question ... does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* Otherwise, district courts would be inundated with Section 1292(b) motions in supposedly novel cases, and the "statutory

exception[]" created by Section 1292(b) would swallow "the final judgment rule." *Scott*, 84 F.4th at 962.

Although Georgia argues at length that the district court decided Question 1 incorrectly, it does not actually demonstrate a split in authority as to the interpretation of the Integration Mandate. Judge J. Pryor's suggestion that Title II applies to "any program run by a public entity" is dicta in a statement respecting the denial of rehiring en banc in a case that addressed the existence of a federal right of action. *United States v. Sec'y Florida Agency for Health Care Admin.*, 21 F.4th 730, 735 (11th Cir. 2021) (J. Pryor, J., statement in support of denial of rehearing en banc). As Georgia acknowledges, *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1340 (N.D. Ga. 2017), concerns "another part" of federal regulations, and *Bacon v. City of Richmond*, 475 F.3d 633 (4th Cir. 2007), is "not an Integration Mandate case." Pet. 14. And in *Waskul v. Washtenaw County Community Mental Health*, 979 F.3d 426, 461 (6th Cir. 2020), Georgia concedes that "no one ... challenged the breadth" of the Integration Mandate. *Id.*

Nor does Georgia's insistence that the district court erred in relying on "pre-*Kisor* decisions" demonstrate a substantial ground for difference of opinion. Pet. 15–16. *Kisor v. Wilke*, 588 U.S. 558 (2019), arguably limited the scope of deference that the district court should afford to the Department of Justice's interpretation of the Integration

17

Mandate.  However, although *Kisor* was decided in June 2019, Georgia did not cite the case in its November 2019 motion to dismiss, Dkt. 47-1, or its November 2023 motion for summary judgment.  Having largely neglected *Kisor* in the district court for six years, Georgia cannot now rely on *Kisor* for the first time.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.") (quotation marks omitted).  And even if the district court should have considered post-*Kisor* cases—even though Georgia concedes that no post-*Kisor* (or pre-*Kisor*) cases address the scope of the Integration Mandate—that would at most demonstrate that the district court erred, not that there are substantial grounds for difference of opinion.

*Standing.*  There is no split in authority as to whether the "administration" of a discriminatory program satisfies the traceability and redressability requirements of Article III.  According to Georgia, "two district court opinions in this circuit [the decision below and *Florida III*[3]] have applied strict liability and found traceability and redressability are satisfied by general supervisory authority in Title II

_____

[3] *United States v. Florida*, 682 F. Supp.3d 1171 (S.D. Fla. 2023) ("*Florida III*").

cases," while "two others [GAO and *Kritner*] did not."[4]  Pet. 20–21.
That is incorrect.  The decision below and *Florida III* both held that the
United States has standing to bring a Title II claim against a state that
plays a role in administering a program or activity for the disabled.
Order at 38–41; *Florida III*, 682 F. Supp 3d at 1192–95.  GAO and
*Kritner* take reconcilable positions.

GAO is factually distinguishable from—and therefore not in conflict
with—this case.  As GAO acknowledges, it is "different" from this case
because it is a class action where the plaintiffs failed to "offer the kind
of individualized evidence the DOJ provided in the other case."  2024
WL 4340034 at *8 n.10.  The GAO court found no traceability because
the individual plaintiffs did not "tie any specific State conduct to [their]
specific injuries," 2024 WL 4340034 at *12, but the district court below
found traceability because Georgia's conduct generally harmed the
GNETS students whom the United States has a statutory obligation to
protect, Order 41–45.  Likewise, the GAO court found no redressability
because Georgia "could not force local actors to do the things
[plaintiffs' expert] said would prevent unnecessary segregation or
discrimination," such as controlling placement decisions of specific

---

[4] *Georgia Advocacy Office et al. v. Georgia*, 2024 WL 4340034, at *1 (N.D.
Ga. Sept. 27, 2024) ("GAO") and *Kritner v. Ala. Dep't of Human Res.*,
2025 WL 451836, at *1 (M.D. Ala. Feb. 10, 2025)

students or requiring local schools to implement certain behavioral interventions. 2024 WL 4340034 at *20. But the relief the United States seeks here is not so specific. It seeks a declaratory judgment that Georgia has violated Title II and an order requiring Georgia to modify its funding of local educational programs in a manner that will enable GNETS students to be educated in the most integrated setting appropriate to those students' needs. That relief suffices to redress the United States' injury here.

*Kritner* also does not depart from the district court's reasoning. In *Kritner*, the court held that minors who were placed in psychiatric residential-treatment facilities lacked standing to bring a Title II claim because their injuries were not traceable to the conduct of defendant agencies that under Alabama law did little more than exercise "[g]eneral control and supervision over Alabama public schools." 2025 WL 451836 at *5. Georgia law differs from Alabama's, however. Under Alabama law, "no statute, regulation, or other legal authority [created] direct responsibility by the [state agency defendants] to provide educational services." *Id.* But under Georgia law, the state has "obligations to children with disabilities" and is responsible for "coordinating services" and providing "state funded special education programs." Order 47; Ga. Const. Art. VIII, Section V, Para. VII;

O.C.G.A. § 49-5-220(a)(6).  And although the *Kritner* court glossed over redressability, similar reasoning distinguishes *Kritner* from this case.

In sum, the district court held that the United States satisfied the traceability and redressability requirements of Article III, and nothing in *GAO* or *Kritner*, which respectively concerned differently situated plaintiffs and a different state's regulatory scheme, undermines the district court's findings.  *See GAO*, 2024 WL 4340034 at *8 n.10 ("[T]he DOJ case is different from this one ... [and] does not affect the Court's conclusion regarding Plaintiff's failure to show injury in fact.").  There is no real substantial ground for difference of opinion as to Question 1.

### b. There Is No Substantial Ground for Difference of Opinion on Question 2

Georgia has not demonstrated that courts are divided as to the first sub-question of Question 2: whether Title II imposes liability only for discrimination that a state directly causes.  There is no circuit split as to whether plaintiffs must show but-for causation in Integration Mandate cases.  *Contra* Pet. 22–23. The D.C. Circuit has held that plaintiffs proved causation because they showed they were treated differently "because of disability."  *Brown v. District of Columbia*, 928 F.3d 1070, 1087 (D.C. Cir. 2019) (emphases omitted).  The Third Circuit's opinion in *CG v. Pennsylvania Department of Education*, 734 F.3d 229, 236 (3d Cir. 2013), says essentially the same thing: "Plaintiffs

must prove that they were treated differently based on the protected characteristic, namely the existence of their disability."[5]  The Second Circuit agrees that "[a]n ADA plaintiff ... must prove that the denial is 'because of' the disability."  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2003).

And as to the second sub-question of Question 2—the proper scope of a remedial order—Georgia makes no effort to demonstrate a split in authority.  It therefore has waived any argument that there is substantial ground for a difference of opinion.

## CONCLUSION

"[P]ermitting liberal use of § 1292(b) interlocutory appeals is bad policy."  *McFarlin*, 381 F.3d at 1259.  Overly "expansive use" of Section 1292 threatens the "proper division of labor between the district courts and the court of appeals ... protected by the final judgment rule."  *Id.* Accordingly, "[m]ost interlocutory orders do not meet th[e] test" for certification for an immediate appeal.  *OFS Fitel, LLC. v. Epstein*, 549 F.3d 1344, 1359 (11th Cir. 2008). The questions certified do no

---

[5] The Third Circuit has held that ADA plaintiffs "need only show that intentional discrimination was the *but for* cause of the allegedly discriminatory action."  *New Directions Treatment v. City of Reading*, 409 F.3d 293, 301 (3d Cir. 2007) (cited by *CG*, 734 F.3d at 236 n.11).  But *New Directions* is not an Integration Mandate case.

present the exceptional circumstances required for an interlocutory and answering these questions will not "materially advance the ultimate termination of the litigation." For the foregoing reasons, this Court should deny Georgia's Section 1292(b) petition for interlocutory review.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*
Northern District of Georgia

*/s/ Aileen Bell Hughes*
AILEEN BELL HUGHES
Georgia Bar No. 375505
Assistant U.S. Attorney
Office of the U. S. Attorney
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 581-6000

HARMEET K. DHILLON
Assistant Attorney General

JESUS A. OSETE
Principal Deputy Assistant
Attorney General

*/s/ Josh R. Zuckerman*
ANDREW G. BRANIFF
JOSHUA R. ZUCKERMAN
Attorneys
Department of Justice
Civil Rights Division
Appellate Section - Ben Franklin
Station - P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a) (5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Goudy Old Style, a proportionally spaced typeface, using Microsoft Word.

This response complies with the 5,200-word type-volume limitation of Fed. R. App. P. 27(d)(2) because, according to the word processing software, it contains 5,020 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f), and excluding the title page, certificates, caption, and signature block.

Today, this motion was filed and served using the Court's CM/ECF system, which automatically sends notification to the parties and counsel of record.

October 2, 2025

/s/ Aileen Bell Hughes
AILEEN BELL HUGHES
Assistant U.S. Attorney